UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GLOBERANGER CORPORATION, | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:11-CV-0403-B |
| | § | |
| SOFTWARE AG, et al., | § | |
| | § | |
|    Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Software AG Germany's[1] ("SAGG") Motion to Dismiss for

Lack of Personal Jurisdiction filed January 11, 2013 (doc. 54). For the reasons that follow, the Court

**GRANTS** the Motion and **DISMISSES** all claims as to Software AG for lack of personal

jurisdiction.

## I.

## BACKGROUND

This case concerns Defendants Software AG-Germany, Software AG-USA, Inc., Software

AG, Inc., Naniq Systems, LLC, and Main Sail, LLC's (collectively "Defendants") alleged

misappropriation of GlobeRanger's trade secrets related to the GlobeRanger RFID Solution, a radio

frequency identification ("RFID") system. By way of background, GlobeRanger uses its RFID software

platform, along with necessary hardware, to create custom-tailored GlobeRanger RFID Solutions for

---

[1]The Court uses the term "Software AG Germany" or "SAGG" to refer to Defendant Software AG, a German-based company, to avoid confusion with Software AG Germany's United States-based subsidiaries Software AG-USA, Inc. and Software AG, Inc. (the "U.S. subsidiaries").

its customers. Pl.'s Original Pet. ("Pet.'") ¶¶ 21-27. Among other allegations, GlobeRanger alleges that Defendants used their access to GlobeRanger's RFID Solution technology to reverse-engineer the program and create and market their own RFID Solution. *Id.* at ¶¶ 42, 44, 88-93.

On February 24, 2011, GlobeRanger filed suit in Texas state court, asserting claims of misappropriation of trade secrets, conversion, unfair competition, conspiracy, and tortious interference against Defendants. *Id.* at ¶¶ 95-119. Defendants removed the action to this Court on March 1, 2011, alleging that GlobeRanger's state law claims were preempted by the Copyright Act. Notice of Removal 2. After the Court appointed an international process server to effect service upon SAGG, on January 11, 2013, SAGG filed its Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) ("Rule 12(b)(2)").

## II.

## LEGAL STANDARD

Rule 12(b)(2) allows for dismissal of an action when the Court lacks personal jurisdiction over the defendant. On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving that a nonresident defendant is subject to the Court's jurisdiction. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citation omitted). To establish the Court's personal jurisdiction over a defendant, the plaintiff need make only a *prima facie* case of jurisdiction. *Id.* The Court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citation omitted). All conflicts between the facts contained in the parties' affidavits and other documentation must be resolved in the plaintiff's favor. *Johnston*, 523 F.3d at 609.

In establishing personal jurisdiction, two preconditions must be met: (1) the nonresident must be amenable to service of process under Texas' long-arm statute; and (2) the assertion of jurisdiction over the nonresident must comport with the Due Process Clause of the United States Constitution. *Jones v. Petty–Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). Because Texas' long-arm statute has been held to extend to the limits of due process, the Court need only determine whether jurisdiction over the defendant is constitutionally permissible. *Id.* at 1067-68 (citation omitted). To meet the federal constitutional test of due process, two elements must be satisfied: (1) the defendant must have purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state such that it would reasonably anticipate being haled into court there; and (2) the exercise of jurisdiction over the defendant must not offend traditional notions of fair play and substantial justice. *Id.* at 1068 (citations omitted).

The "minimum contacts" test can be met by contacts giving rise to either specific or general jurisdiction. *Johnston*, 523 F.3d at 6010. General personal jurisdiction exists when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* Specific personal jurisdiction exists when the cause of action arises from the nonresident defendant's contacts with the forum state. *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996). In either context, the court considers the totality of the circumstances in conducting the minimum contacts analysis; no single factor is determinative. *Stuart*, 772 F.2d at 1192.

## III.

## ANALYSIS

The Petition alleges that the Court has personal jurisdiction over SAGG because SAGG

"an/or one of its co-conspirators has engaged in tortious conduct against Globeranger in the State of Texas," the U.S. subsidiaries and SAGG "are a unitary business operation," the U.S. subsidiaries are wholly owned by SAGG, the U.S. subsidiaries are financially dependent on SAGG, SAGG "consolidates the U.S. [subsidiaries'] financials," SAGG "selects and assigns the U.S. [subsidiaries'] key personnel and controls the operations of the U.S. [subsidiaries], including the U.S. [subsidiaries'] sales [and] marketing and product development, which are the core issues of this lawsuit," the U.S. subsidiaries engage in purposeful activities in Texas, the U.S. subsidiaries maintain continuous and systems contacts with Texas for the benefit of SAGG, and SAGG participated in a conspiracy to defraud Globeranger in which SAGG or its co-conspirators committed one or more overt acts in furtherance of the conspiracy in Texas. Pet. ¶ 9. Globeranger has also submitted evidence in the form of printouts from SAGG's or its subsidiaries' website, which purportedly show that SAGG and its subsidiaries are a unitary business operation.

The Court will examine below these allegations and evidence, as well as SAGG's evidence, in determining whether SAGG has sufficient minimum contacts with Texas. In doing so, the Court notes that Globeranger need only make a *prima facie* case of personal jurisdiction, as the Court did not hold a hearing on this motion. *See Johnson*, 523 F.3d at 609. Further, in determining whether Globeranger has established a *prima facie* case, any conflict in jurisdictional evidence favors Plaintiff Globeranger. *See Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004).

A.    *Minimum Contacts*

1.    Specific Personal Jurisdiction

The Court first notes that the Petition, while alleging that SAGG "has engaged in tortious conduct against Globeranger in the State of Texas," Pet. ¶ 9, does not allege any specific conduct

taking place in Texas which gives rise to the claims at issue.[2] *See, e.g., id.* at ¶ 67 (alleging exportation of Globeranger's RFID Solution to Germany); ¶¶ 69-70 (discussing conduct in lab in Pennsylvania). Now, on SAGG's Motion to Dismiss, Globeranger does not argue that SAGG engaged in tortious conduct in Texas but asserts other grounds to find specific jurisdiction. Specifically, Globeranger first argues that SAGG directed activities towards Globeranger, a Texas resident, and Globeranger felt the effects of the injury in its home state, and thus personal jurisdiction may be found under the "effects test" announced in *Calder v. Jones*, 465 U.S. 783, 789 (1984). Globeranger also argues that SAGG's participation in a "designed and protracted conspiracy directed at a Texas resident to misappropriate its trade secrets and export them to Germany for [SAGG's] use," confers personal jurisdiction over SAGG. Pl.'s Resp. 11. Finally, Globeranger argues that this court has specific personal jurisdiction over SAGG based on certain software license keys which were subject to an End User License Agreement ("EULA") containing a forum selection clause stating that the user submits to the jurisdiction of all state and federal courts in Dallas, Texas.

      i.     Effects test

Globeranger cites *Calder v. Jones*, 465 U.S. at 789, for the proposition that if the brunt of the injury is felt by the plaintiff in his home state, the defendant should reasonably anticipate being hailed into court in that state, under the effects test. Globeranger argues that SAGG engaged in a conspiracy to misappropriate Globeranger's RFID solution, *see* Pet. ¶¶ 60-62, which are "specific activities directed" toward Texas-resident Globeranger, and thus personal jurisdiction is proper. However, courts have explained that even after *Calder*, personal jurisdiction under the effects test

---

[2]*But see* Pet. ¶ 88 (alleging marketing presentation in Texas *after* alleged misappropriation of Globeranger's trade secrets).

is rare, and plaintiffs must still show that a defendant purposefully availed itself of the benefits of the

forum state or purposely directed conduct at the forum state. *See Stroman Realty v. Wercinski*, 513

F.3d 476, 486 (5th Cir. 2008); *see also Hoffman v. L&M Arts*, 774 F. Supp. 2d 826, 843-45 (N.D.

Tex. 2001) (the effects test "is but one facet of the ordinary minimum contacts analysis, to be

considered as part of the full range of the defendant's contacts with the forum, and the plaintiff's

residence in the forum, and suffering of harm there, will not alone support jurisdiction under

*Calder*.") (citing, *inter alia*, *Revel v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002); *Panda Brandywine Corp.

v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (plaintiff must show purposeful

availment besides the plaintiff's residence in the state and the foreseeability of defendant's actions

causing injury in Texas)).

Here, Globeranger has not established through a *prima facie* case that SAGG specifically

directed any conduct towards Texas. In light of the full range of SAGG's minimal contacts with

Texas, even considering the alleged harm to Globeranger, the effects test alone does not support

personal jurisdiction over SAGG in this case.

    ii.  Conspiracy

Globeranger argues that SAGG's participation in an alleged conspiracy, where its co-

conspirators committed one or more overt acts in furtherance of the conspiracy in Texas,[3] confers

personal jurisdiction on this Court. However, even with allegations of a conspiracy, the Court must

still evaluate each of the Defendants' contacts separately to determine whether personal jurisdiction

exists. *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) ("[W]e decline to

---

[3]It is unclear what "overt acts" allegedly took place in Texas.

recognize [an] assertion of personal jurisdiction over a nonresident defendant based solely upon the effects or consequences of an alleged conspiracy with a resident in the forum state."); *see also Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1, 6 (5th Cir. 2004) (plaintiff has to show that defendant "individually, and not as part of the conspiracy, had minimum contacts with Texas") (citing *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999)). Globeranger must show that either the alleged conspiracy or SAGG's alleged tortious conduct was related to or arose out of SAGG's contacts with Texas. *See id.*

Here, the Petition, along with Globeranger's Response and related appendices, do not show that the conspiracy was related to SAGG's contacts with Texas. They also do not show that SAGG's actions were related to or arose out of these contacts with Texas. Even assuming that SAGG's employees were involved with the Navy project discussed in the Petition or with the development of RFID technology in the United States, a point disputed by SAGG's sworn declaration, *see* Def.'s App. 4, there is no indication of the conspiracy's connection to Texas, aside from the alleged harm to a Texas resident, Globeranger. As such, SAGG's alleged participation in a conspiracy to misappropriate Globeranger's trade secrets is not a basis for specific personal jurisdiction over SAGG in the Northern District of Texas.

iii.     Software license keys

Globeranger also argues that certain software license keys acquired by or at the direction of SAGG were subject to an End User License Agreement with a forum selection clause selecting the federal or state courts of Dallas County as proper forums and stating that the signers submit to the jurisdiction of these courts. Pl.'s Resp. 10 (citing Pet. ¶ 70, Ex. A ¶ 7.6). However, neither the Petition nor any evidence submitted allege or show that SAGG was a party to the EULA at issue.

Rather, the pleadings and evidence submitted to the Court suggest that Defendant Naniq Systems, LLC ("Naniq") was the only party to such agreement with Globeranger. *See, e.g.*, Pet. ¶ 74 (discussing Globeranger letter to Naniq regarding obligations of the EULA). Courts cannot bind a non-party to a contract, because the non-party never agreed to the terms of set forth in the contract. *See, e.g., Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 652 (5th Cir. 2004). As such, Globeranger's invocation of the forum selection clause in the EULA as a basis to confer personal jurisdiction over SAGG is unavailing.

Overall, examining the totality of the circumstances, Globeranger has not alleged or shown that its claims arise from SAGG's contacts with Texas. As such, Globeranger has not met its burden of showing, by establishing a *prima facie* case, that the Court has specific personal jurisdiction over SAGG.

2.     General Personal Jurisdiction

Globeranger also argues that this Court has general personal jurisdiction over SAGG, given its allegations that SAGG regularly conducts business in the State of Texas and that SAGG exercised a significant degree of control over its wholly owned subsidiaries in directing their actions with respect to the alleged conspiracy.

In order to establish a *prima facie* case of general personal jurisdiction over a defendant, a plaintiff must show that the defendant has "substantial, continuous, and systematic" contacts with a particular jurisdiction. *See, e.g., Johnston*, 523 F.3d at 609. Further, these contracts must be continuous and systematic over a reasonable number of years up to the date the suit was filed. *Id.* at 609-10. Globeranger alleges that SAGG regularly conducts business in Texas and has a significant degree of control over its wholly owned subsidiaries in directing their actions with respect to the

alleged conspiracy. FAC ¶ 9; Pl.'s Resp. 11-12 (alleging that SAGG directs and controls its subsidiaries' strategy, sales, marketing, research and development through a German executive board and a German Chief Technology Officer). Globeranger also argues that this Court has general personal jurisdiction over SAGG, based on the contacts of its subsidiaries, through an alter ego or single business enterprise theory under *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983).

Based on the Original Petition and Globeranger's Response to SAGG's Motion to Dismiss and accompanying appendices, Globeranger has not established a *prima facie* case of general personal jurisdiction. SAGG's sworn declaration states that SAGG is a registered stock corporation under German law, with its principal office in Germany and no offices, employees, or property in the State of Texas. SAGG is also not registered to do business in Texas and does not conduct business in or direct business to Texas, and it does not advertise or market in Texas. Def.'s App. 3. Indeed, the Petition contains no allegations discussing any action by SAGG or SAAG's presence specifically in Texas. On SAGG's Motion to Dismiss, Globeranger now produces printouts from SAGG's or its subsidiaries' website which purportedly show SAGG's contacts with Texas. However, even assuming that these printouts indicate that SAGG has some contacts with Texas through its websites, rather than SAGG's subsidiaries' contacts, such contacts are not the substantial, continuous, and systematic contacts required in order to assert general personal jurisdiction. As such, Globeranger has not established a *prima facie* case showing that SAGG has sufficient minimum contacts with Texas to confer general personal jurisdiction on this Court.

Further, the Petition does not establish a *prima facie* case of personal jurisdiction under an alter ego or single enterprise theory based on the contacts of SAGG's U.S. subsidiaries. "[A] foreign

parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there." *Hargrave*, 710 F.2d at 1159. Courts must presume that subsidiaries, even one wholly-owned, are independent of their parents for jurisdictional purposes. *Gonzalez v. Bank of America Ins. Servs., Inc.*, 454 F. App'x 295, 300 (5th Cir. 2011). To overcome this presumption and impute the contacts of a subsidiary onto a parent corporation, a plaintiff must show by "clear evidence" that the parent possesses control over the subsidiary to a great degree than that normally associated with common ownership. *Id.* at 300-01. In examining whether a parent exercises this degree of control, courts look to, but not limited to, the *Hargrave* factors: the amount of stock owned by the parent of the subsidiary, whether the two corporations have separate headquarters, whether they have common officers and directors, whether they observe corporate formalities, whether they maintain separate accounting systems, whether the parent exercises complete authority over the subsidiaries' general policy, and whether the subsidiary exercise complete authority over its daily operations. *Hargrave.*, 710 F.2d at 1160.

Here, Globeranger does not establish a *prima facie* case, much less show by clear evidence, that SAGG exercises greater control over its U.S. subsidiaries than that normally exercised by a corporate parent. The corporations have separate headquarters, separate bylaws and board meetings, separate assets and bank accounts, and they file separate tax returns. Def.'s App. 3-4. The U.S. subsidiaries are responsible for setting some of their own general policies, including most hiring and firing decisions, and they also control their own daily operations, including marketing and sales functions and determination of their own supply requirements. *Id.* at 4. The Court recognizes that the U.S. subsidiaries are wholly-owned by SAGG with some central oversight exercised by SAGG, a point not disputed by SAGG. *See* Pet. ¶¶ 9, 65-66. However, such fact is outweighed by the

indicators of "separateness" listed above, such that Plaintiffs have not shown by clear evidence that SAGG exercises greater than normal control over its subsidiaries. The Court also finds Globeranger's evidence in the form of website printouts insufficient evidence that SAGG exercises greater than normal control. *See EsNtion Records, Inc. v. JonesTM, Inc.*, No. 3:07–CV–2027–L, 2008 WL 2415977, *4 (N.D. Tex. June 16, 2008) (website printouts and other evidence did not suggest more than a normal parent-subsidiary corporate relationship).

In light of the foregoing, the Court presumes that SAGG and its subsidiaries are independent for jurisdictional purposes, and Globeranger has not overcome this presumption. As such, the Court can not impute the contacts of SAGG's subsidiaries to SAGG for jurisdictional purposes, and Globeranger has not presented a *prima facie* case of general personal jurisdiction through an alter ego theory. Given that Globeranger has not presented a *prima facie* case of this Court's general personal jurisdiction or specific personal jurisdiction over SAGG, the Court **GRANTS** SAGG's Motion to Dismiss for Lack of Personal Jurisdiction.[4]

B.    *Leave to Depose*

Globeranger argues that if the Court finds it does not have jurisdiction over SAGG, it should be allowed to take jurisdictional discovery. A court may grant jurisdictional discovery when the plaintiff has established a "preliminary showing of jurisdiction" over the nonresident parent company. *EsNtion Records*, 2008 WL 2415977, at *6 (citing *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005)). Here, Globeranger has not shown a preliminary finding of jurisdiction. Further,

---

[4]As the Court does not find sufficient minimum contacts, in either the general or specific personal jurisdiction framework, the Court does not consider the "fair play and substantial justice" prong of the due process inquiry.

Globeranger's arguments in support of jurisdictional discovery do not show that such discovery would add any significant facts to its jurisdictional claims. *See Kelly v. Syria Petroleum Dev. B.V.*, 213 F.3d 841, 856-57 (5th Cir. 2000) (district court did not abuse discretion in denying jurisdictional discovery given that plaintiffs offered no basis to show that proposed depositions of corporate representatives would contradict those representatives' sworn declarations). As such, the Court **DENIES** Globeranger's request for jurisdictional discovery.

## IV.

## CONCLUSION

For the reasons listed above, Software AG Germany's Motion to Dismiss is **GRANTED**. Software AG Germany is hereby **DISMISSED** from the case due to Plaintiff's failure to establish a *prima facie* case of personal jurisdiction.


SO ORDERED.

SIGNED: April 12, 2013.


JANE J. BOYLE
UNITED STATES DISTRICT JUDGE