UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GLOBERANGER CORPORATION | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:11-CV-0403-B |
| | § | |
| SOFTWARE AG USA, INC. *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Rule 50(b) Motion for Judgment as a Matter of Law ("Motion for JMOL") and Rule 59 Motion for a New Trial and Alternatively, for a Remittitur ("Motion for New Trial or Remittitur" or "Motion for New Trial"). For the reasons that follow, the Court **DENIES** both Motions (docs. 372 & 374).

## I.

## MOTION FOR JMOL[1]

The Court begins by addressing the Motion for JMOL filed by Defendants Software AG USA, Inc. and Software AG, Inc. (together, "Software AG"). Software AG timely filed this Motion following the Court's entry of judgment in accordance with the jury's verdict, finding in favor of Plaintiff GlobeRanger Corporation ("GlobeRanger") on its trade secret misappropriation claim and awarding GlobeRanger $15 million in compensatory damages. Software AG now asserts that "[t]he Court should vacate its judgment and render judgment in favor of Software AG for multiple,

---

[1] The relevant facts and procedural history of this case can be found among the numerous pretrial orders issued in this case. *See, e.g.*, Doc. 152, Mem. Op. & Or. ("First MSJ Order").

independent reasons." Doc. 373, Def.'s Br. Supp. Rule 50(b) Mot. J. Matter Law ("Def.'s Mot. JMOL") 1.

The first ground Software AG offers in support of their request for judgment as a matter of law is that GlobeRanger's claim "is preempted by the Copyright Act." *Id.* Second, in the event GlobeRanger's claim is not preempted, Software AG asserts that the Court must conclude that it "lacks subject-matter jurisdiction and [that] remand is the only appropriate option." *Id.* at 1-2. Third, Software AG next submits in support of their Motion for JMOL that "GlobeRanger failed to present legally sufficient evidence to support elements of its misappropriation claim." *Id.* at 2-3. Fourth, Software AG argues that GlobeRanger also failed to present "legally sufficient evidence" of its damages. *Id.* at 3. Before taking up these contentions, the Court briefly addresses the applicable standard of review.

A.      *Rule 50(b) Legal Standard*

Rule 50(b) of the Federal Rules of Civil Procedure allows a party to file a renewed motion for judgment as a matter of law following the entry of judgment. FED. R. CIV. P. 50(b). Such motions "should be granted if the evidence is legally insufficient, such that 'the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict.'" *Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n*, 776 F.3d 321, 327 (5th Cir. 2015) (quoting *Boeing v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc), *overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 336 (5th Cir. 1997) (en banc)). In reviewing a Rule 50(b) motion, "facts are viewed, and inferences made, in the light most favorable to the nonmovant." *X Technologies, Inc. v. Marvin Test Sys., Inc.*, 719 F.3d 406, 411 (5th Cir. 2013) (citing *Arthur J. Gallagher & Co. v. Babcock*, 703 F.3d 284, 293 (5th Cir. 2012)).

- 2 -

B.     *Copyright Preemption*

Software AG first moves for judgment as a matter of law on the ground that GlobeRanger's trade secret misappropriation claim is preempted by the Copyright Act. "The Copyright Act expressly preempts all causes of action falling within its scope, with a few exceptions." *Daboub v. Gibbons*, 42 F.3d 285, 288 (5th Cir. 1995) (referencing 17 U.S.C. § 301(a)). Before finding a claim is preempted by the Copyright Act, the Fifth Circuit "has held that both prongs of a two-factor test must be satisfied." *Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003). Under the first prong, "the claim is examined to determine whether it falls 'within the subject matter of copyright' as defined by 17 U.S.C. § 102." *Id.* (citing *Daboub*, 42 F.3d at 289). For the second prong, "'the cause of action is examined to determine if it protects rights that are equivalent to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106.'" *Id.* (quoting *Daboub*, 42 F.3d at 289).

Here, the parties solely dispute whether the second prong of the copyright preemption analysis is satisfied for GlobeRanger's trade secret misappropriation claim. As mentioned, the second prong of the copyright preemption analysis asks whether the state law claim at issue "protects rights that are 'equivalent' to any of the exclusive rights of a federal copyright," which include "the exclusive right to reproduce, distribute, perform, and display the copyrighted work." *Daboub*, 42 F.3d at 289 (citations omitted); *see* 17 U.S.C. § 106 (listing the exclusive rights granted by the Copyright Act). "The test for evaluating the equivalency of rights is commonly referred to as the 'extra element' test." *Carson*, 344 F.3d at 456 (citing *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 787 (5th Cir. 1999)). Under this test, "if the act or acts of [the defendant] about which [the plaintiff] complains would violate both [state] law and copyright law, then the state right is deemed equivalent to copyright." *Alcatel*, 166 F.3d at 787 (citation omitted). On the other hand, if the state law claim

carries "one or more qualitatively different elements" in comparison to a federal copyright claim, "then the right granted under state law does not lie within the general scope of copyright, and preemption does not occur." *Id.* (citation and quotation marks omitted).

Before addressing the parties' dispute with respect to the second prong, some background on the evolution of the preemption issue over the four-year course of these proceedings is helpful.

        1.    Copyright Preemption Background

At the inception of this case, Software AG argued that GlobeRanger's trade secret misappropriation claim was preempted by the Copyright Act. *See* Doc. 1, Def.'s Notice of Removal 2-5. At that time, the Court found Software AG's contentions persuasive and granted their Rule 12(b)(6) motion to dismiss on copyright preemption grounds. *See* Doc. 27, Mem. Op. & Or. Denying Mot. Remand ("Order Denying Remand"); Doc. 28, Mem. Op. & Or. Granting Mot. Dismiss. 4-5. In finding GlobeRanger's trade secret misappropriation claim preempted based on the pleadings, the Court concluded that the first prong was satisfied based on language in GlobeRanger's original petition suggesting "that this action centers on the software and not the process, and thus is within the subject matter of the Copyright Act." Order Denying Remand 6-7. In regard to the second prong, the Court similarly focused on "the core of GlobeRanger's misappropriation of trade secrets . . . allegations." *Id.* at 8. These core allegations, the Court found, merely suggested that "Defendants wrongfully copied and misused GlobeRanger's RFID Solution software," thereby "destroy[ing] the competitive advantage GlobeRanger obtained by spending considerable time and money on development." *Id.* Since this alleged theory of liability seemed to cover "the same purpose as the Copyright Act and [to] protec[t] the same interests," the Court concluded that the second prong was also satisfied, and that GlobeRanger's trade secrets claim was, therefore, preempted. *Id.*

GlobeRanger promptly appealed the Court's Rule 12(b)(6) dismissal. On September 14, 2012, the Fifth Circuit reversed this Court's finding of preemption. *See GlobeRanger Corp. v. Software AG*, 691 F.3d 702 (5th Cir. 2012). In doing so, the Fifth Circuit concluded that the first prong of the preemption analysis was not satisfied under the Rule 12(b)(6) standard of review, given that "GlobeRanger ha[d] pled factual allegations that at least in part fall outside the scope of copyright." *Id.* at 710. And with the first prong of the analysis unsatisfied, the Fifth Circuit declined to address the second prong with respect to GlobeRanger's trade secret misappropriation claim. *See id.* at 709-10. Furthermore, the Fifth Circuit noted that it only meant to "reach [] modest conclusions" in reversing this Court's dismissal on the pleadings, and that the Court should consider Software AG's copyright preemption defense *anew* on remand, "with the aid of a more developed record." *See id.* (emphasis added).

On remand, however, copyright preemption took a back seat to other complex issues in this case—that is, until Software AG re-urged the preemption defense in a Rule 50 motion at the close of GlobeRanger's case-in-chief in November 2014. For its part, after remand from the Circuit, GlobeRanger amended and refined its claims, and ultimately "decided to streamline a complex case by jettisoning the aspects of its claims that were not focused on [Software AG's] misappropriation of GlobeRanger's proprietary software . . . and the trade secrets embedded therein." Doc. 385, Pl.'s Resp. Opp'n Mot. JMOL 2-3. GlobeRanger, accordingly, in response to Software AG's reassertion of copyright preemption at trial, conceded that the first prong had been satisfied. *See id.* at 3. That left only the second prong to consider, which the Court does below, mindful of the foregoing procedural history.

2.      Copyright Preemption Analysis

Software AG argues, in its Motion for JMOL, that the Court should simply adopt its prior determination, at the pleadings stage, that GlobeRanger's trade secret misappropriation claim satisfies the second prong of the copyright preemption analysis. *See* Def.'s Mot. JMOL 5-7. In Software AG's view, a contrary finding would require the Court to "reverse" itself on its prior ruling. *Id.* at 6. The Court should not do this, Software AG submits, because its prior ruling that trade secret misappropriation is equivalent to copyright is "in line with the only other precedent from within the Northern District of Texas[,] . . . the only Texas state court to consider this issue[,] . . . [and] decisions from other federal district courts within Texas." *Id.* at 6-7.[2]

GlobeRanger counters first by highlighting all the developments in this case that brought its trade secret misappropriation claim to this point in the proceedings. *See* Pl.'s Resp. Opp'n Mot. JMOL 1-3. It then argues that the Court should now find its trade secrets claim is not preempted, because its claim is not equivalent to a federal copyright claim. *See id.* at 3-9. "Unlike copyright claims," GlobeRanger reasons, "claims for misappropriation of trade secrets require a showing of secrecy and a breach of a confidential relationship" or improper use. *Id.* at 4. GlobeRanger contends that this conclusion is supported by "the weight of authority as well as the better-reasoned authority—including all on-point federal appellate authority of which GlobeRanger is aware." *Id.* at 9.[3] As follows, the Court finds GlobeRanger's contentions here more persuasive.

_____

[2] The cases cited here by Software AG include: *MicroSource, Inc. v. Superior Signs, Inc.*, No. 3:97-cv-2733-G, 1998 WL 119537 (N.D. Tex. Mar. 9, 1998) (Fish, J.); *Butler v. Cont'l Airlines, Inc.*, 31 S.W.3d 642 (Tex. App. 2000); *Beardmore v. Jacobson*, No. 4:13-cv-361, 2014 WL 3543726 (S.D. Tex. July 14, 2014); *Butler v. Cont'l Airlines, Inc.*, No. Civ. A. 01-2194, 2001 WL 1509545 (S.D. Tex. Nov. 19, 2001).

[3] The circuit court cases cited here by GlobeRanger include: *Stromback v. New Line Cinema*, 384 F.3d 283 (6th Cir. 2004); *Seng-Tiong Ho v. Taflove*, 648 F.3d 489 (7th Cir. 2011); *Computer Assoc. Int'l, Inc. v.*

As both parties agree, the Fifth Circuit has never specifically addressed the second prong of the copyright preemption analysis in the context of a Texas trade secret misappropriation claim. Nevertheless, its decisions in *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772 (5th Cir. 1999) and *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396 (5th Cir. 2000) are instructive.

In *Alcatel*, the Fifth Circuit was faced with the question of whether the plaintiff's claim for "misappropriation under the Texas common law of unfair competition" was preempted by the Copyright Act.[4] 166 F.3d at 785. After finding the first prong satisfied, the Fifth Circuit held with respect to the second prong that "[d]espite the seemingly divergent purposes of federal copyright law and state misappropriation law, . . . under the discrete facts of this case, the rights protected under these laws are equivalent." *Id.* at 788. The Fifth Circuit reasoned that "the acts that form the basis of [the] misappropriation claim touch on interests clearly protected by the Copyright Act, including" the defendant's "reproduction" and "use" of the plaintiff's copyrighted materials, and its "distribution of [derivatively-prepared] works in competition with [the plaintiff]." *Id.* at 789. The Fifth Circuit also

---

*Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992); *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197 (3d Cir. 2002); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147 (1st Cir. 1994); *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655 (4th Cir. 1993); *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989); *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823 (10th Cir. 1993); *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532 (11th Cir. 1996).

[4] While the plaintiff in *Alcatel* also asserted a trade secret misappropriation claim, *see* 166 F.3d at 777, the Fifth Circuit did not consider whether this claim was preempted. It only considered preemption in relation to the unfair competition by misappropriation claim, which differs significantly from trade secret misappropriation under Texas law. *See Bayco Products, Inc. v. Lynch*, No. 3:10-CV-1820-D, 2011 WL 1602571, at *10 n.5 (N.D. Tex. Apr. 28, 2011) ("As noted in *United States Sporting Products, Inc. v. Johnny Stewart Game Calls*, 865 S.W.2d 214 (Tex. App. 1993, writ denied), the unfair competition by 'misappropriation' cause of action is different from 'misappropriation of trade secrets' or the 'trademark infringement' variety of unfair competition.").

rejected the notion that the state law requirements of "'extensive time, labor, skill, and money" and "in competition with" were extra elements that rendered the plaintiff's rights qualitatively different under Texas and federal law. *See id.* Under "the circumstances that are before us in the instant case," the Fifth Circuit reasoned, these supposed extra elements are either "necessarily contemplated" by copyright or fall within "the scope of protection afforded by copyright law," the Fifth Circuit found. *Id.* Therefore, it concluded "that, because [the plaintiff] has failed to demonstrate the presence of any element that renders different in kind its rights under state and federal law, [the plaintiff's] state misappropriation claim is preempted by federal copyright law." *Id.*

Conversely, the Fifth Circuit in *Computer Mgmt. Assistance* held that a plaintiff's cause of action under the Louisiana Unfair Trade Practices Act was not preempted, because the protection the plaintiff sought pursuant to this state law was "not 'equivalent' to that provided by the Copyright Act." 220 F.3d at 404-05. The Circuit reasoned that, unlike copyright, the plaintiff's state law claim for relief from the defendant's unfair trade practices "requires proof of fraud, misrepresentation or other unethical conduct." *Id.* at 404.

Here, GlobeRanger has demonstrated the presence of "extra" elements at the core of its Texas misappropriation of trade secrets claim, including the elements of impropriety and secrecy. To illustrate, first consider the rights created by copyright and enjoyed by copyright holders. Copyright intends to "promote and protect creativity." *Alcatel*, 166 F.3d at 787 (citations omitted). It does this by giving qualifying authors—those who put forth the effort necessary to create an "original" work—exclusive rights to the work over a set duration of time. *See id.* at 787-89; 17 U.S.C. § 302(a) (providing that a copyright generally "endures for a term consisting of the life of the author and 70 years after the author's death"). The nature of these exclusive rights granted to copyright holders has

been aptly described by the Seventh Circuit as follows:

> Rights "equivalent to any of the exclusive rights within the general scope of copyright" are rights established *by law*—rights that restrict the options of persons who are strangers to the author. Copyright law forbids duplication, public performance, and so on, unless the person wishing to copy or perform the work gets permission; silence means a ban on copying. A copyright is a right against the world.

*ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1454 (7th Cir. 1996).

In contrast, the rights of a trade secret holder are rooted in principles of "equity." *K&G Oil Tool & Serv. Co. v. G&G Fishing Tool Serv.*, 158 Tex. 594, 606, 314 S.W.2d 782, 790 (Tex. 1958). Indeed, the "rights" a trade secret owner is said to possess are merely "'secondary consequences of the primary fact that the law makes some rudimentary requirements of good faith.'" *Hyde Corp. v. Huffines*, 158 Tex. 566, 577 (Tex. 1958) (quoting *E. I. Du Pont De Nemours Powder Co. v. Masland*, 244 U.S. 100, 102 (1917)). In other words, a trade secret holder's rights only exist to the extent someone "acquired the trade secret by breach of a confidential relationship or other improper means," and can only be enforced against those privy to the breach or impropriety. *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 449 (5th Cir. 2007). For this reason, courts have often "stressed the blameworthy conduct of the defendant as the basis of this tort." *Metallurgical Indus. Inc. v. Fourtek, Inc.*, 790 F.2d 1195, 1203 (5th Cir. 1986) (citation omitted); *see also K&G Oil*, 158 Tex. at 602, 314 S.W.2d at 787 ("The basis of a trade secret case is a breach of contract or wrongful disregard of confidential relationships.") (citation and quotation marks omitted). This is in stark contrast to copyright infringement, which courts have described as "a strict liability tort" in the sense "that plaintiffs do not need to prove a defendant's mental state." *Guzman v. Hacienda Records & Recording Sutdio, Inc.*, No. 6-12-CV-42, 2014 WL 6982331, at *5 n.9 (S.D. Tex. Dec. 9, 2014) (citations and quotation marks omitted). Therefore, like the extra element of "fraud,

misrepresentation or other unethical conduct" in *Computer Mgmt. Assistance*, the breach of confidence/improper use element required by Texas law renders GlobeRanger's trade secret rights different in kind from its rights under the Copyright Act.

In addition, consistent with the equitable principles underlying trade secret misappropriation, the rights of a trade secret owner last only as long as the owner keeps his protected information secret. *See Luccous v. J. C. Kinley Co.*, 376 S.W.2d 336, 338 (Tex. 1964) ("It is self-evident that the subject matter of a trade secret must be secret.") (citation omitted). Compare this to copyright, which grants rights lasting a discrete period of time to reward an author's past creative efforts; trade secret misappropriation, on the other hand, offers indefinite protection to those who continuously and diligently protect the secrecy of their work. This secrecy requirement, therefore, is yet another way in which GlobeRanger's rights under the law of trade secret misappropriation qualitatively differ from its rights under the Copyright Act. *See, e.g.*, *Seng-Tiong Ho*, 648 F.3d at 503 ("A claim of trade secret misappropriation, then, requires that the information have a status of secrecy . . . [, which] go[es] beyond the rights regulated under the Copyright Act.").

Software AG's contention that the Court must contradict itself to reach the above result ignores the nearly four years of complex litigation that took place since the Court's initial ruling on their copyright preemption defense. That ruling was made on GlobeRanger's original petition, which the Court believed, at its "core," alleged nothing more than a copyright infringement claim stylized as trade secret misappropriation. After the Fifth Circuit reversed and remanded, the parties engaged in years of extensive discovery and pretrial motion practice before copyright preemption was once again raised at trial, more than two years later. In the meantime, GlobeRanger amended its pleadings multiple times, and produced extensive evidence demonstrating the true nature of its trade secrets

claim. Moreover, the issues of whether GlobeRanger kept its information "secret" and whether Software AG acquired this information improperly were revealed as central elements of GlobeRanger's claim.[5] On the basis of these developments and the reasoning discussed above, the Court is now persuaded that GlobeRanger has adequately shown that its trade secrets claim asserts qualitatively different rights than those governed by the Copyright Act. Therefore, the Court concludes that GlobeRanger's trade secrets claim is not preempted, and rejects Software AG's Motion for JMOL to the extent it seeks relief on this basis.

C.    *Subject Matter Jurisdiction*

Software AG next contends that, in the event the Court finds that GlobeRanger's trade secrets claim is not preempted by the Copyright Act, "it still must vacate its judgment because, at that time, it will lack the necessary subject-matter jurisdiction to adjudicate this action." Def.'s Mot. JMOL 8-9. As it did with the copyright preemption issue, the Court begins by offering context to Software AG's contentions vis-à-vis a brief background discussion as to how the Court has maintained jurisdiction over GlobeRanger's claims up to this point.

1.    Subject Matter Jurisdiction Background

GlobeRanger originally filed this action in state court, "asserting claims of misappropriation of trade secrets, conversion, unfair competition, conspiracy, and tortious interference" under Texas state law. Order Denying Remand 2. The named defendants, including Software AG, subsequently removed GlobeRanger's state law claims to this Court pursuant to 28 U.S.C. § 1441(a), which allows

---

[5] *See, e.g.*, First MSJ Order 36 (addressing Software AG's contention "that GlobeRanger's proprietary information lost its trade-secret status when GlobeRanger delivered the Navy Solution to the Navy without adequate protections"); Def.'s Mot. JMOL 20 (arguing that "GlobeRanger presented no legally sufficient evidence that Software AG acquired any of its proprietary information improperly").

for the removal of cases from state court "if the case could have originally been filed in federal court." *Id.* The federal jurisdictional basis asserted by Software AG was that GlobeRanger's claims were preempted by the Copyright Act, giving this Court subject matter jurisdiction under the doctrine of complete preemption. *See id.* Under this doctrine—which applies to claims preempted by the Copyright Act—"'the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *GlobeRanger*, 691 F.3d at 705-05 (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 396 (1987)).

With its state action removed, GlobeRanger moved to remand its claims back to state court, which the Court denied on the ground that all of GlobeRanger's state law claims were completely preempted by the Copyright Act. *See* Order Denying Remand. The Fifth Circuit, as mentioned, later reversed the Court on its related order dismissing all of GlobeRanger's claims on copyright preemption grounds. *See GlobeRanger*, 691 F.3d at 707-09. Having found that "at least some of GlobeRanger's claims are not preempted at this stage," *id.* at 715, the Fifth Circuit then turned to the issue of jurisdiction.

In framing the issue of federal jurisdiction, the Fifth Circuit noted that if the Copyright Act "plausibly preempts some but not all" of GlobeRanger's claims, "then the case can continue in federal court." *Id.* at 706. The reason for this, the Fifth Circuit explained in a similar case, is that "[w]hen a complaint raises both completely-preempted claims and" state law claims that are not completely preempted, "the court may exercise removal jurisdiction over the completely-preempted claims and supplemental jurisdiction (formerly known as 'pendent jurisdiction') over the remaining claims." *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337-38 (5th Cir. 1999); *see also*  28 U.S.C. §

1367(a). But "[i]f none of [GlobeRanger's] claims were preempted," the Fifth Circuit continued in this case, "there would not be federal jurisdiction under the complete preemption doctrine" or otherwise. *GlobeRanger*, 691 F.3d at 709.

With these legal parameters set, the Fifth Circuit turned to "[t]he best argument . . . for preemption," which was the one made for "GlobeRanger's conversion claim," and concluded that "the defendants have argued enough of a basis for preemption on GlobeRanger's conversion claim to stay in federal court." *Id.* at 709-10. The court noted, however, that its "conclusion on conversion is without prejudice to GlobeRanger's ability to prove its claim" is not preempted. *Id.* at 709. Therefore, the Fifth Circuit remanded back to this Court with instructions that "[i]f, with the aid of a more developed record, . . . the district court concludes that neither the conversion claim nor any other is preempted, it will lack jurisdiction over this case." *Id.*

On remand, GlobeRanger, as alluded to before, decided not to re-allege its conversion claim; its tortious interference claim was dismissed during summary judgment; and leading up to trial, it refined its remaining claims by dropping its unfair competition claim and focusing exclusively on its trade secret misappropriation and related conspiracy allegations. Following a trial, the jury returned a verdict in GlobeRanger's favor on its trade secrets claim, which the Court in its above discussion found to be outside the scope of the Copyright Act, and therefore, not preempted.

2.     Subject Matter Jurisdiction Analysis

Even though this case proceeded all the way to trial without Software AG raising the issue, they argue in their Motion for JMOL that the Court lacks jurisdiction over GlobeRanger's claim now that judgment has been entered against them. More precisely, Software AG contends that the Court cannot exercise jurisdiction under the complete preemption doctrine any longer, since as the above

discussion illustrates, the Court has not affirmatively found any of GlobeRanger's claims to be preempted by the Copyright Act during these remand proceedings. *See* Def.'s Mot. JMOL 9-13. And though GlobeRanger argues that supplemental jurisdiction over its state law claim remains appropriate, Software AG counters that this "argument puts the cart before the horse because it assumes (wrongly) that there is a federal jurisdictional predicate that the Court can use to exercise supplemental jurisdiction over the trade-secret misappropriation claim." *Id.* at 9.

GlobeRanger strongly disagrees with Software AG's assessment, arguing that the federal jurisdictional predicates in this case include at least some of GlobeRanger's original claims, which Software AG "used as jurisdictional hooks to remove the case on the basis of preemption." Pl.'s Resp. Opp'n Mot. JMOL 10. While, admittedly, none of these so-called "hooks" remain in play at this point in the proceedings, GlobeRanger contends that its voluntary abandonment of these claims does not defeat the Court's continuing jurisdiction over this case and its supplemental jurisdiction over the pendant state law claim that remains. *See id.* at 11-13. As follows, the Court agrees.

The Court's ability to exercise supplemental jurisdiction over GlobeRanger's trade secret misappropriation claim is governed by 28 U.S.C. § 1367, which provides in relevant part that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Even if the Court has the power to assert supplemental jurisdiction over GlobeRanger's state law claim, however, "[t]hat power need not be exercised in every cases in which it is found to exist." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). The Court, instead, "may decline to exercise supplemental jurisdiction over a

- 14 -

claim" based on its discretionary consideration of various statutory and common law factors. 28 U.S.C. § 1367(c); *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 158-59 (5th Cir. 2011).

In this case, Software AG does not contend that the relevant statutory and common law factors support a *discretionary* remand of GlobeRanger's trade secrets claim. Instead, Software AG attacks the Court's *power* to exercise supplemental jurisdiction in the first place; not because the trade secrets claim is not sufficiently "related" to the other claims as required to exercise supplemental jurisdiction, but rather, because in Software AG's view, the Court has no "original jurisdiction" to supplement under 28 U.S.C. § 1367(a).

Software AG's position here would make sense if the Court had affirmatively determined on remand that *all* of GlobeRanger's original claims fall outside the scope of copyright, stripping the Court of the "original jurisdiction" that it appeared to have at the pleadings stage. In fact, that is the precise scenario laid out by the Fifth Circuit when it remanded this case—instructing that this Court "will lack jurisdiction over this case" if it finds, "with the aid of a more developed record," that the Fifth Circuit's "modest conclusions" on the pleadings are not supported by the facts, and that, in reality, "neither the conversion claim nor any other is preempted." *GlobeRanger*, 691 F.3d at 709-10. This scenario is what led to the two appellate court decisions that Software AG relies on here.[6] In *McClelland v. Gronwaldt*, for example, the Fifth Circuit concluded that the district court had no "basis for original jurisdiction to support removal" after finding that none of the state law claims

_____

[6] As Software AG partially concedes, *see* Def.'s Mot. JMOL 11, the third case they cite here in support, *Jones v. Roadway Express, Inc.*, is distinguishable, because the Fifth Circuit there based its conclusion that remand was necessary on a statute prohibiting removal of cases arising under a state's workmen compensation laws, not on the fact that no completely-preempted or other federal law claims remained in the case. *See* 931 F.2d 1086, 1091-92 (5th Cir. 1991).

alleged were completely preempted. 155 F.3d 507, 519 (5th Cir. 1998). Likewise, the Eleventh Circuit, in *Ervast v. Flexible Products Co.*, concluded that the plaintiff's state action was "improperly removed to federal court on [the] basis" of complete preemption under ERISA, "because the claim that [the plaintiff] brought against the defendants [was] not an ERISA civil action . . . but [was] grounded in state law." 346 F.3 1007, 1017 (11th Cir. 2003).

This case is different from the circumstances described above, because the claims that initially gave this Court original jurisdiction have never been determined to be false jurisdictional predicates; GlobeRanger simply abandoned its predicate claims without a final adjudication on the preemption issue underlying those claims. But just because these predicate claims dropped out does not mean that the Court is thereby deprived of supplemental jurisdiction over any related state law claims under § 1367.[7] That would be inconsistent with the well-established principle that "events occurring subsequent to removal" generally "do not oust the district court's jurisdiction once it has attached." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938).[8] Indeed, federal courts, in accordance with this long-standing principle, routinely assert supplemental jurisdiction over pendent state law claims, even after all federal claims have been dismissed or dropped from the case.

----

[7] *See, e.g., Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999) ("As we affirm the dismissal of all of Bass's federal claims, no federal question remains before the district court. However, this fact does not divest the court of jurisdiction: instead, the court must exercise its discretion whether to exercise supplemental jurisdiction over Bass's state law claims.").

[8] *See also Henry v. Indep. Am. Sav. Ass'n*, 857 F.2d 995, 998 (5th Cir. 1988) ("[A] plaintiff's voluntary amendment to a complaint after removal to eliminate the federal claim upon which removal was based will not defeat federal jurisdiction.") (citation and quotation marks omitted); *In re Carter*, 618 F.2d 1093, 1101 (5th Cir. 1980) ("It is a fundamental principle of law that whether subject matter jurisdiction exists is a question answered by looking to the complaint as it existed at the time the petition for removal was filed. When a subsequent narrowing of the issues excludes all federal claims, whether a pendent state claim should be remanded to state court is a question of judicial discretion, not of subject matter jurisdiction.") (internal citations omitted).

For example, in *Gibbs*, the Supreme Court found that the lower court was within its authority "in proceeding to judgment on the state claim," even after the plaintiff's federal claims failed. 383 U.S. at 728. Similarly, in the context of a state court action removed to federal court, the Supreme Court, in *Carnegie-Mellon Univ. v. Cohill*, found that the lower court had discretion over the plaintiff's state law claims, despite the fact that "the single federal-law claim in the action was eliminated." 484 U.S. 343, 350-51 (1988), *superseded on other grounds by statute as stated in Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557 (10th Cir. 2000). The Fifth Circuit has similarly found authority to assert supplemental jurisdiction in cases—similar to this one—in which the federal predicate claims drop out because of the plaintiff's voluntary abandonment, instead of a judicial ruling. *See McGowin v. ManPower Intern, Inc.*, 363 F.3d 556, 558 n.1 (5th Cir. 2004) ("Jurisdiction is proper, because McGowin's complaint, at the time of removal, included a federal age discrimination claim . . . . That claim, though abandoned, permits a district court to exercise supplemental jurisdiction over remaining state claim."); *Mathis v. Exxon Corp.*, 302 F.3d 448, 452 (5th Cir. 2002) ("The court retained jurisdiction over the purely state law causes of action that had been supplemental to the federal claims[, which were abandoned].").

The result is no different in the context of complete preemption. In *Hook v. Morrison Milling Co.*, for instance, the plaintiff "filed a wrongful discharge and negligence action in Texas state court," which the defendant removed on the ground that the claims were preempted by ERISA. 38 F.3d 776, 779 (5th Cir. 1994). After the district court found the wrongful discharge claim preempted, the plaintiff "amended her petition to omit the wrongful discharge claim," leaving the negligence claim, which the district court did not believe to be preempted. *Id.* When the case was later appealed, the Fifth Circuit held that "the district court's subject matter jurisdiction was proper at all times,"

- 17 -

reasoning that "a post-removal amendment to a petition that deletes all federal claims, leaving only pendent state claims, *does not* divest the district court of its properly triggered subject matter jurisdiction." *Id.* at 779-80.

Software AG argues that these cases are distinguishable, because each involves "a federal claim [that] was alleged and dropped/dismissed, or a state-law claim [that] was found to be completely preempted before it was dropped/dismissed." Doc. 387, Def.'s Reply Supp. Mot. JMOL 8. But the Court is aware of at least one Fifth Circuit decision that presents these supposedly unprecedented circumstances noted by Software AG. Specifically, in *Giles v. NYLCare Health Plans, Inc.*, an action in state court was "removed to federal court on the ground that" ERISA preempted the state law claims filed by the plaintiff, Giles. 172 F.3d 332, 335 (5th Cir. 1999). After removal, Giles "amended" her original complaint in order to "dro[p] the [state law] claims that she admitted were preempted." *Id.* She then moved for remand, which the district court granted pursuant to its "discretion to remand pendant state law claim," without ever determining whether the state law claims dropped by Giles were indeed preempted for purposes of establishing original jurisdiction. *Id.*

In affirming the district court's decision, the Fifth Circuit in *Giles* noted that "[o]rdinarily, after deciding that certain claims are, in fact, completely preempted, [a district court] could dismiss those. It then either could exercise its discretion to remand . . . or continue with the remaining claims." *Id.* at 338. "But Giles," the Fifth Circuit continued, "moved, in federal district court, to amend her complaint to eliminate the completely-preempted claims," without any court determination on the complete preemption issue. *Id.* Despite this, the Fifth Circuit implicitly found that the district court had the jurisdictional authority to issue a "discretionary remand of [Giles' remaining] supplemental state law claims." *Id.* at 339.

Similarly, in this case, the Fifth Circuit determined that the parties' pleadings, at the time of removal, sufficiently established federal jurisdiction on the basis of complete preemption, with supplemental jurisdiction existing over those claims that were not preempted. *See GlobeRanger*, 691 F.3d at 709-10. It remanded with instructions that the Court could set aside these "modest conclusions" and find that it lacks jurisdiction in the event the Court "concludes that neither [GlobeRanger's] conversion claim nor any other is preempted." *Id.* But the Court never reached such a conclusion; instead, like the plaintiff in *Giles,* GlobeRanger voluntarily dropped its conversion and unfair competition claims based, at least in part, on its believe that such claims were preempted. In accordance with the line of appellate decisions detailed above, the Court concludes that these abandoned claims give the Court the power it needs to exercise supplemental jurisdiction over GlobeRanger's trade secret misappropriation claim. And since Software AG does not dispute that the § 1367 and common law factors favor the Court's retention of jurisdiction at this late stage in the proceedings,[9] the Court declines to exercise its discretion and relinquish jurisdiction over GlobeRanger's remaining state law claim. Therefore, the Court denies Software AG's last-minute request that the Court remand this case back to state court for lack of subject matter jurisdiction.

D.   *Trade Secret Misappropriation Liability*

Software AG next argues that "GlobeRanger failed to present legally sufficient evidence to support elements of its [trade secret] misappropriation claim." Def.'s Mot. JMOL 2. "'Trade secret

---

[9] *See, e.g.*, *Batiste v. Island Records Inc.*, 179 F.3d 217, 226-28 (5th Cir. 1999) (finding district court abused its discretion in remanding remaining state law claims after three years of extensive litigation in federal court); *Brookshire Bros. Holding v. Dayco Products, Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) ("Our case law is clear that when a district court declines to exercise jurisdiction over remaining state law claims following the dismissal of all federal-law claims and remands a suit after investing a significant amount of judicial resources in the litigation analogous to that invested by the district court in this case, that court has abused its discretion under 28 U.S.C. § 1367.").

misappropriation under Texas law is established by showing: (a) a trade secret existed; (b) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; and (c) use of the trade secret without authorization from the plaintiff.'" *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*, 637 F.3d 604, 610 (5th Cir. 2011) (quoting *Phillips v. Frey*, 20 F.3d 623, 627 (5th Cir. 1994)). Software AG challenges GlobeRanger's presentation at trial for all three of these elements, which the Court considers in turn below.

### 1.   Existence of a Trade Secret

Software AG first contends that "[a] fundamental shortcoming of GlobeRanger's trade-secret misappropriation claim is that GlobeRanger never specified which of its trade secrets were at issue— let alone, which of its trade secrets were misappropriated by Software AG." Def.'s Mot. JMOL 13. "At the very least," Software AG argues, "the allegedly misappropriated trade secrets could be categorized," which GlobeRanger should have, but failed to do. *Id.* at 14. Software AG continues that "[w]hile the Court did not believe that GlobeRanger's failure to specify the alleged trade secret(s) at issue required dismissal at the summary judgment state, . . . liability for misappropriation cannot attach" without GlobeRanger providing more specificity. *Id.* at 16. Since it failed to do so, Software AG argues that the Court should grant judgment in their favor. *See id.* at 16-17. For the reasons that follow, the Court disagrees.

As the above demonstrates, Software AG's contentions here are mostly a re-purposing of arguments that the Court has already rejected at other stages of this case, including summary judgment, and the Court need not state its view on these points again. And to the extent Software AG means to argue that the Court should have required GlobeRanger to specify its misappropriated trade secrets in more detail at trial and in the jury instructions—this is really just an abuse of

discretion argument that the Court has either addressed in its pre-trial and in-trial rulings or will address in its discussion of Software AG's Motion for a New Trial below.

With that aside, the Court believes that GlobeRanger presented more than sufficient evidence for a reasonable juror to conclude that a misappropriated trade secret existed. As GlobeRanger details in its brief, evidence was presented at trial indicating that Software AG "obtained working instances of GlobeRanger's entire RFID Solution," which "contained numerous trade secrets, including the workflow and workflow components of GlobeRanger's iMotion platform, Federal Solutions Accelerator, and DoD Solution, as well as the source code, processes and formulas underlying those workflows and components." Pl.'s Resp. Opp'n Mot. JMOL 17. GlobeRanger additionally presented evidence at trial suggesting that Software AG "also obtained, via reverse-engineering, GlobeRanger's proprietary iMotion Edge DB database schema, and confidential technical manuals for GlobeRanger's DoD Solution and its iMotion Software Development Kit." *Id.* at 17-18. This evidence "not only identified what materials [Software AG] misappropriated . . . but also explained what aspects of those materials made them trade secrets." *Id.* at 19. There was also evidence that allowed the jury to distinguish between the trade secret and non-trade-secret portions of these materials, *see id.,* such that the jury could reasonably infer whether the materials Software AG received and used were actually trade secrets.

The above evidence demonstrates that GlobeRanger provided sufficient particularity regarding its trade secrets. Just because courts in a number of unbinding decisions required further specificity under a completely different set of circumstances does not make GlobeRanger's presentation with respect to the first element legally deficient. The Court need only determine that GlobeRanger presented enough evidence for a jury to legitimately conclude that the misappropriated

information/materials contained at least some trade secrets. *See, e.g.*, *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 875 (5th Cir. 2013) ("Wellogix presented sufficient evidence and testimony to support the jury's finding that Wellogix's technology contained trade secrets."). Since the evidence discussed above does just that, the Court upholds the jury's findings on the first element.

### 2.   "Use" of the Trade Secrets

The next argument made by Software AG is that "GlobeRanger presented no evidence of 'use' at trial, nor could it."[10] Def.'s Mot. JMOL 17. Software AG compares these circumstances to another case recently decided by this Court, *Spear Mktg., Inc. v. BancorpSouth Bank*, No. 3:12-CV-3583-B, 2014 WL 2608485 (N.D. Tex. June 11, 2014). *See* Def.'s Mot. JMOL 17-19. Specifically, Software AG argues that "like the plaintiff in *Spear Marketing*, GlobeRanger only could rely on circumstantial evidence of use," and that like in that case, the circumstantial evidence at trial "failed to show that any of Software AG's products or the 'Rave Solution' were similar to the 'Navy RFID Solution,' let alone that any of Software AG's products or the 'RAVE Solution' included an 'innovative feature[]' or a 'secret idea' comprising one of GlobeRanger's unspecified trade secrets." *Id.* at 18-19 (quoting *Spear Marketing*, 2014 WL 2608485, at *13) (brackets in original). Therefore, Software AG contends that GlobeRanger's claim should, likewise, be dismissed for failure to establish "use" of any trade secrets. *See id.* at 20. The Court, once again, disagrees.

"Use" for purposes of trade secret misappropriation is broadly defined as "any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the

---

[10] To the extent Software AG attempts to re-raise its contention that GlobeRanger should have specified its trade secrets in more detail, *see* Def.'s Mot. JMOL 17, the Court declines to re-address that argument here.

defendant," including "marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of information that is a trade secret." *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 451 (5th Cir. 2007) (quoting Restatement Third of Unfair Competition, § 40). In *Wellogix*, for example, the Fifth Circuit found sufficient evidence "to support the jury's finding that Accenture used [Wellogix's] trade secrets," including "that Accenture joined with SAP to develop a complex services component," during which time "they were able to access Wellogix's dynamic templates source code," and that Accenture's documents suggested they were using Wellogix's content. 716 F.3d at 877. The Fifth Circuit also found insignificant the differences that existed between Accenture's "complex services templates" and Wellogix's, reasoning that "the standard for finding 'use' is not whether Accenture's templates contained Wellogix trade secrets, but whether Accenture 'relied on the trade secrets to assist or accelerate research or development' of its templates." *Id.* (quoting *HAL*, 500 F.3d at 451) (internal brackets omitted). And since there was enough evidence for a jury to "legitimately infer . . . that Accenture relied on Wellogix's templates to develop its own," the Fifth Circuit rejected Accenture's request for judgment as a matter of law on this basis. *Id.* at 877-78 (citations and quotation marks omitted).

Likewise, here, GlobeRanger produced sufficient evidence at trial to support the jury's conclusion that Software AG used its trade secrets in the development of the RAVE solution. Specifically, GlobeRanger showed that Software AG, like Accenture in *Wellogix*, "was hired to develop an RFID solution," and that during the RAVE project, Software AG gained access to GlobeRanger's trade secrets, including its "workflow XML and .net source code" through the live instances that GlobeRanger had earlier installed for the Navy. Pl.'s Resp. Opp'n Mot. JMOL 21.

GlobeRanger also presented documents from the RAVE team that Software AG was a part of, indicating, among other things, that the team was to "'replicate current [GlobeRanger] functionality." *Id.* (citation, quotation marks, and emphasis omitted) (brackets in original). Other Software AG documents referenced GlobeRanger's RFID solution, and suggested Software AG was accessing GlobeRanger's technology to meet the deadlines it faced in working on the project. *See id.*; Doc. 386, Pl.'s Resp. Opp'n Rule 59 Mot. 4 (further detailing use evidence). Despite differences between GlobeRanger's software and that employed by Software AG, the Court concludes that the above evidence is sufficient for a jury to reasonably infer that Software AG "relied on [GlobeRanger's RFID technology] to develop its own." *Wellogix*, 716 F.3d at 878 (citing *HAL*, 500 F.3d at 451).

Moreover, Software AG's reliance on the Court's decision in *Spear Marketing* is misguided. *Spear Marketing* involved a much different set of circumstances than those presented here. While the Court declines to cover those differences in detail at this time, a few differences bear mentioning. For one, contrary to Software AG's suggestions, the Court in *Spear Marketing* never stated that the plaintiff, SMI, *must* demonstrate "use" via evidence of access and similarity because of SMI's reliance on circumstantial proof; it simply indicated that SMI was permitted to—"may"—establish use "through the access–plus–similarity test [that] SMI propose[d]." 2014 WL 2608485, at *11. And this access-plus-similarity test was the only way SMI attempted to demonstrate "use," whereas GlobeRanger relied on circumstantial proof akin to the plaintiff's evidence in *Wellogix*. In addition, the evidence in *Spear Marketing* showed that the defendants gained limited access to SMI's products for wholly legitimate and non-suspicious reasons, whereas the evidence in this case indicates that Software AG gained much deeper access to GlobeRanger's products—including to its source code, manuals, and other proprietary information—in order to replicate GlobeRanger's technology.

Similarly, the defendants in *Spear Marketing* had spent years developing a complex forecasting engine before gaining access to SMI's basic software, while in this case, Software AG admits to having no RFID product or software before the RAVE project, and the internal documents suggest that their purpose in accessing GlobeRanger's technology was to "replicate" its functionality. For these reasons and more, the Court finds these cases distinguishable. And because the above evidence is such that a jury could legitimately infer Software AG's "use" of GlobeRanger's trade secrets, the Court upholds the jury's finding on the issue of "use."

### 3.    Improper Use

The third challenge made by Software AG with respect to the trade secret elements is that "GlobeRanger presented no legally sufficient evidence that Software AG acquired any of its proprietary information improperly." Def.'s Mot. JMOL 20. Part of Software AG's argument here appears to re-hash the same contentions rejected above. *See id.* at 20-21 ("[B]ecause GlobeRanger failed to specify which alleged trade secrets were at issue . . . , neither the Court nor the jury could make [certain] determination[s] in accordance with the regulations."). The rest re-raises issues discussed at length and rejected in the Court's denial of Software AG's first motion for summary judgment. *See id.* at 21-24. The Court need not re-state its rationale for rejecting these arguments at this time. In the Court's view, there was enough evidence for the jury to legitimately infer that the materials containing GlobeRanger's misappropriated trade secrets were commercial computer software and commercial computer software documentation. As the Court has discussed before, this finding opened a door under the relevant government contracting regulations to allow the jury to reasonably conclude that Software AG improperly accessed GlobeRanger's technology, which contained the trade secrets at issue. Therefore, the Court denies Software AG's Motion for JMOL

on this ground as well.

        E.     *Damages*

        The last contention asserted in Software AG's Motion for JMOL relates to the damages the jury awarded GlobeRanger for its trade secret misappropriation claim. In particular, Software AG argues that "GlobeRanger's single theory of damages was unreliable, and no legally sufficient evidence of proximate cause supported the damages award." *Id.* at 24. Like some of the above contentions, this one requires only a brief discussion at this time, because it mirrors arguments previously addressed and rejected by the Court. Specifically, Software AG's attack here is on the purportedly "flawed and unreliable model of damages" presented by expert witness Bryan Van Uden, *id.*, which is the same argument Software AG unsuccessfully made in their *Daubert* motion that was denied before trial. Rather than re-trace its rationale for rejecting this contention, the Court simply notes that GlobeRanger presented more than enough evidence at trial to support its damages theory, which was based on a "costs saved or avoided by [Software AG] from the misappropriation" model. *See* Pl.'s Resp. Opp'n Mot. JMOL 24-25. From this, a jury could legitimately conclude that GlobeRanger is entitled to collect damages proximately caused by Software AG's misappropriation. Therefore, the Court denies Software AG's final request for judgment as a matter of law, and upholds the jury's verdict awarding GlobeRanger damages on its trade secret misappropriation claim.

## II.

## MOTION FOR NEW TRIAL OR REMITTITUR

        The Court next addresses Software AG's Motion for New Trial or Remittitur, in which Software AG asserts three general points of contention. First, Software AG argues that the Court should grant them a new trial, because the jury's finding Software AG liable for trade secret

misappropriation is against the great weight of the evidence. *See* Doc. 375, Def.'s Br. Supp. Rule 59 Mot. New Trial & Alternatively Remittitur ("Def.'s Mot. New Trial") 4-6. Second, Software AG claims that a new trial is additionally warranted because of at least two errors in the Court's instructions to the jury. *See id.* at 6-12. Third, Software AG lastly attacks the damages awarded by the jury, arguing that either a new trial or remittitur should be granted in light of the excessive amount of the award. *See id.* at 12-16. The Court considers each of these assertions, in turn, below.

A.   *The Jury's Finding of Liability*

Software AG first argues that a new trial is warranted, because the jury's verdict in favor of GlobeRanger on its trade secrets claim is against the great weight of the evidence. *See id.* at 4-5. This request is made pursuant to Rule 59 of the Federal Rules of Civil Procedure, under which the Court "may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1). This places "'[t]he decision to grant or deny a motion for a new trial . . . within the sound discretion of the trial court.'" *Foradori v. Harris*, 523 F.3d 477, 504 (5th Cir. 2008) (quoting *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982)). This discretion is even broader when the trial court denies, rather than grants, such a motion. *See Cates v. Creamer*, 431 F.3d 456, 460 (5th Cir. 2005) ("Where a motion for a new trial is granted, we scrutinize that decision more closely.").

One ground for granting a new trial is upon a finding that "the jury verdict was against the great weight of the evidence." *Id.* (citing *Scott v. Monsanto Co.*, 868 F.2d 786, 789 (5th Cir. 1989)). Under this standard, "the jury's verdict must be 'against the great—not merely the greater—weight of the evidence.'" *Scott*, 868 F.2d at 789 (quoting *Conway v. Chemical Leaman Tank Lines, Inc.*, 610

F.2d 360, 362–63 (5th Cir. 1980)). "[M]ere conflicting evidence or evidence that would support a different conclusion by the jury cannot serve as the grounds for granting a new trial." *Islander E. Rental Program v. Barfield*, 145 F.3d 359 (5th Cir. 1998) (citing *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir. 1992)).

In arguing that the jury's verdict in favor of GlobeRanger is against the great weight of the evidence, Software AG points the Court to "the same reasons articulated in [their Motion for JMOL]," including GlobeRanger's purported failure to specify its trade secrets, the supposed lack of evidence concerning Software AG's "use" of GlobeRanger's trade secrets, and Software AG's "improper" use defense based on the government contracting regulations. Def.'s Mot. New Trial 5. For the same reasons discussed in denying Software AG's Motion for JMOL, the Court is not persuaded that a new trial is warranted based on GlobeRanger's presentation of its claim. Just as the jury could legitimately find that Software AG misappropriated GlobeRanger's trade secrets, the Court believes that the jury's verdict is not against the great weight of the evidence. Therefore, the Court, in its discretion, declines to grant Software AG a new trial on this ground.

B.      *The Jury Instructions*

Software AG next contends that the jury instructions[11] contain at least two errors that "justify a new trial." Def.'s Mot. New Trial 1. These purported errors in the jury instructions include that: "(1) they permitted the jury to find liability without specifying which trade secret(s) Software AG misappropriated . . . , and (2) they presented an incomplete and incorrect view of dispositive

---

[11] The Jury Instructions and Verdict of the Jury can be found at Doc. 348, although note that this docket entry is missing a few pages of the Instructions due to a clerical error in the uploading process. Fortunately, the Court read the entire Instructions into the record at trial before allowing the jury to retire for deliberations. *See* Doc. 360, Trial Tr. Volume 10 at 161-87.

government contracting regulations." *Id.* at 1-2.

Trial courts are afforded "'wide latitude in fashioning jury instructions,'" which will not be disturbed for "technical imperfections.'" *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 352 (5th Cir. 2010) (quoting *Bender v. Brumley*, 1 F.3d 271, 276 (5th Cir. 1993)). "Only where the charge 'as a whole leaves the court with substantial and ineradicable doubt whether the jury has been properly guided in its deliberations' should the court consider a new trial." *Ganz v. Lyons P'ship, L.P.*, 961 F. Supp. 981, 996 (N.D. Tex. 1997). On appeal, a trial court's "'refusal to give a requested jury instruction constitutes reversible error only if the instruction 1) was a substantially correct statement of the law, 2) was not substantially covered in the charge as a whole, and 3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the party's ability to present a given claim.'" *Travelers Cas. & Sur. Co. of Am. v. Ernst & Young LLP*, 542 F.3d 475, 489 (5th Cir. 2008) (quoting *Kanida v. Gulf Coast Medical Personnel LP*, 363 F.3d 568, 578 (5th Cir. 2004)) (brackets omitted).

The Court first considers Software AG's contention that the jury instructions erroneously failed to require GlobeRanger to specify its allegedly misappropriated trade secrets. This argument, of course, is much like Software AG's above assertion that judgment as a matter of law is warranted because of GlobeRanger's failure to adequately specify its trade secrets. But it differs in that Software AG, here, claims undue prejudice from the jury instruction's failure to "list or require the jury to specify or agree on which alleged trade secrets were misappropriated," which purportedly facilitated the persistence of "this fundamental error" in GlobeRanger's trade secrets claim. Def.'s Mot. New Trial 7. According to Software AG, the complexity of trade secrets claims such as GlobeRanger's "necessitates providing . . . the jury with a precise and complete identification of the alleged trade

secrets at issue," which "is why courts often require plaintiffs [in similar cases] to specify the allegedly misappropriated trade secrets." *Id.* (citations and quotation marks omitted). And given that "multiple alleged trade secrets are at issue," and the fact that GlobeRanger could have broken those trade secrets down into discrete categories, Software AG argues that the Court erred in not requiring GlobeRanger "to specify the alleged trade secrets at the outset, and . . . [in] not requir[ing] the jury to specify or agree on which trade secret(s) it believed were misappropriated." *Id.* at 8-9.

But while the Court acknowledges that it probably had the discretion to order GlobeRanger to more precisely specify its trade secrets at trial or to categorize them in the jury instructions, the Court, likewise, believes that it acted within its discretion in refusing to do so. As mentioned, GlobeRanger made sufficiently clear what materials Software AG allegedly misappropriated, what trade secrets those materials contained, and how Software AG purportedly used these secrets improperly. This is all that the law requires. Though Software AG wanted GlobeRanger to more precisely connect the dots, the Court decided at trial that Software AG could argue this point on its own, and that the circumstances did not warrant an order boxing GlobeRanger into parameters dictated by Software AG. Nor did the Court believe that a jury question breaking down GlobeRanger's trade secrets into categories proposed by Software AG was necessary or justified. The jury instructions, viewed as a whole, dealt with Software AG's concern over jurors agreeing about exactly which trade secrets were misappropriated. And to the extent the instructions were not sufficiently precise, Software AG has not shown that this "seriously impaired [their] ability to present" their case at trial. *Travelers*, 542 F.3d at 489 (quotation marks and citation omitted).

Next, the Court addresses Software AG's second jury instructions contention, which is that "the instructions given on the government contracting regulations were incomplete and erroneous

in several ways."[12] Def.'s Mot. New Trial 10. In particular, Software AG points to the Court's purported failure to give: (i) "co-extensive instructions about 'noncommercial computer software' and 'technical data'" to go along with the instructions on commercial computer software; (ii) instructions "about the importance and binding nature of the CDO Technologies GSA Scheduling Restrictions, PX-312, and the SAIC-Navy Prime Contract, DX-137"; and (iii) instructions "that the government obtains certain rights in software as long as that software is developed at least partially with government funds." *Id.* at 10-11. The Court, as follows, is not persuaded that any of these alleged errors actually warrant a new trial.

First, the Court believes that it acted within its discretion in declining to include Software AG's proposed instructions on "noncommercial computer software" and "technical data." As the Court has previously discussed, commercial computer software, noncommercial computer software, and technical data are mutually exclusive terms under the relevant government contracting regulations. *See* First MSJ Order 16-17. And in these circumstances, liability could not have attached if GlobeRanger's allegedly misappropriated materials did not qualify as commercial computer software or its documentation. *See id.* at 19-20. Accordingly, the Court instructed the jury that Software AG could not be held liable for misappropriating any item not qualifying as commercial computer software or commercial computer software documentation under the government contract

---

[12] A threshold matter raised here by Software AG is that "[t]he Court's decision to submit [the government contracting regulations] issue to the jury, instead of deciding it before trial, alone is a sufficient basis for granting a new trial." Def.'s Mot. New Trial 10. But this point seems to be, in reality, an attempt to re-assert Software AG's contention that judgment as a matter of law is warranted under the "improper" use element. To the extent it is not, Software AG's argument for a new trial on this basis makes little sense; what would be the point of another *jury trial* if the Court should decide this question on its own? After all, if the Court should have found for Software AG on this issue, they would be entitled to judgment as a matter of law; if not, the jury's current verdict stands. In addition, this argument was arguably waived by Software AG, who, unlike GlobeRanger, proposed jury instructions on this issue from the start.

regulations.[13] This instruction obviated the need for a technical data or noncommercial computer software instruction. While Software AG argues that the Court should have included such instructions for context, the Court, in its discretion, decided that doing so would unnecessarily clutter an already-complex set of jury instructions.

Second, the Court, likewise, concludes that the lack of instructions on the importance of the written government contracts at issue does not warrant a new trial. GlobeRanger aptly highlights the shortcomings of Software AG's contentions on this point. *See* Pl.'s Resp. Opp'n Mot. New Trial 12-13. Note first that Software AG has not made "clear what instructions [it] believes the Court should have given." *Id.* at 12. In regards to the first potential instructions at issue—one informing the jury as to what it may consider in determining the Navy's rights—the Court agrees with GlobeRanger that this rejected proposal "is so inconsequential that it could not possibly have been important enough to impair [Software AG's] ability to present its claim." *Id.* at 13. In regards to the second— which purported to instruct the jury that the Navy's rights were governed by written contracts submitted as exhibits—this proposed instruction was unnecessary, potentially misleading, and ultimately asked the Court "to comment on the evidence," which is a matter "committed to the trial court's discretion." *Id.* (citation and internal quotation marks omitted). For these reasons, the Court concludes that it acted within its discretion.

Third and finally, the Court disagrees with Software AG that an instruction should have been given "inform[ing] the jury that the government obtains certain rights in software as long as that

---

[13] *See* Trial Tr. Volume 10 at 174-75 ("If, on the other hand, you find that an alleged trade secret does not qualify as commercial computer software or commercial computer software documentation, then that alleged trade secret could not have been misappropriated by Software AG.").

software is developed at least partially with government funds." Def.'s Mot. New Trial 11. The Court already rejected a similar argument made by Software AG in moving for summary judgment, concluding that under the relevant regulations, "so long as the Navy Solution qualifies as commercial computer software, it makes no difference whether the Navy paid for any portion of GlobeRanger's developmental work." First MSJ Order 35-36. Thus, an instruction on government funding would not be relevant to the extent the jury concluded that GlobeRanger's trade secrets derived from commercial computer software. And since, as mentioned, the instructions indicated that GlobeRanger could not prevail on its claim if the trade secrets derived from anything but commercial computer software, the Court concluded, in its discretion, that an instruction on how government funding impacts the Navy's rights would be superfluous. As neither this nor any other excluded instruction warrants a new trial, the Court denies Software AG's request for a new trial on this basis.

C.      *The Jury's Damages Award*

As a final request, Software AG seeks a new trial, or alternatively, a remittitur, on the ground that "GlobeRanger's unreliable damages model grossly inflated GlobeRanger's potential damages award." Def.'s Mot. New Trial 12-16. The Court's decision here is judged "under an abuse of discretion standard." *Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 177 (5th Cir. 1992) (citations omitted). In the exercise of that discretion, the Court may order a new trial if the jury's award of damages is "so excessive as to be the product of passion or prejudice" on the part of the jury. *Esposito v. Davis*, 47 F.3d 164, 168 (5th Cir. 1995) (citing *Allen v. Seacoast Prods., Inc.*, 623 F.2d 355, 364 (5th Cir. 1980)). Alternatively, the Court may issue a remittitur if the damages award "'exceeds the bounds of any reasonable recovery.'" *Brunnemann*, 975 F.2d at 178 (quoting *Hansen v. Johns–Manville Products Corp.*, 734 F.2d 1036 (5th Cir. 1984)) (bracket omitted).

- 33 -

Here, the Court does not believe that Software AG should be granted a new trial or a remittitur based on the jury's $15 million damages award. First, a new trial is not warranted, because there is no indication that the award "is 'so exaggerated as to indicate bias, passion, prejudice, corruption, or other improper motive'" on the part of the jury. *Wells v. Dallas Indep. Sch. Dist.*, 793 F.2d 679, 684 (5th Cir. 1986) (quoting *Caldarera v. Eastern Airlines*, 705 F.2d 778, 784 (5th Cir. 1983)). Indeed, the award is below the $19.7 million figure proposed by GlobeRanger, and the jury declined to award punitive damages.

Second, the Court also declines to issue a remittitur in light of the amount of the award. Like their earlier damages argument, Software AG's central contention here is that GlobeRanger's expert witness, Bryan Van Uden, submitted an unreliable damages model that failed to adequately support GlobeRanger's costs saved/avoided damages theory. But while GlobeRanger's damages model and supporting evidence has its flaws, the law does not require the sort of precision demanded by Software AG. Moreover, the fact that the jury awarded GlobeRanger less than the amount generated by its damages model suggests that the jury took these flaws into account in determining a reasonably accurate award. And though Software AG believes that GlobeRanger's damages are more reliably measured by their damages expert's testimony or the mere $860,000 in profits they earned for the RAVE project, the jury was free to go with the evidence presented by GlobeRanger instead. In doing so, the jury determined GlobeRanger's damages to be $15 million, which reasonably reflected the evidence presented at trial surrounding GlobeRanger's costs avoided/saved theory. Therefore, the Court declines to issue a remittitur requiring GlobeRanger to accept a lower amount.

III.

CONCLUSION

For the foregoing reasons, the Court **DENIES** Software AG's two post-judgment motions,

including their Motion for JMOL (doc. 372) and Motion for a New Trial or Remittitur (doc. 374).


SO ORDERED

SIGNED: June 11, 2015.


JANE J. BOYLE
UNITED STATES DISTRICT JUDGE